GAF CORPORATION, Plaintiff,

v.

EASTMAN KODAK COMPANY, Defendant.

No. 73 Civ. 1893.

United States District Court,
S. D. New York.

May 12, 1976.

As Amended May 18, 1976.

Simpson, Thacher & Bartlett, New York City, for plaintiff; Cyrus R. Vance, John A. Guzzetta, Leslie R. Bennett, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant; John Doar, New York City, of counsel.

Bernard Wehrmann, Atty., Dept. of Justice, New York City, for the United States of America, Amicus Curiae; Charles V. Reilly, New York City, of counsel.

OPINION

FRANKEL, District Judge.

The court is called upon to decide whether the plaintiff, GAF Corporation, is free to turn over to the Government papers of Eastman Kodak Company obtained through discovery in this private antitrust suit. The Government's interest, pressed by the Antitrust Division of the Department of Justice, is in use of these materials for potential "law enforcement" purposes not clearly specified or specifiable in advance.

The setting is a substantial case begun (with others by two different plaintiffs) over three years ago and now approaching trial. There has been, expectably, an enormous amount of discovery. Defendant has produced more than 400,000 documents. Some 80,000 were given initially subject to an agreed order of confidentiality providing that documents designated as confidential, as well as summaries and excerpts thereof, were to be used "solely for the purpose of conducting this litigation," with review of the documents limited, in essence, to attorneys of record, their employees, and certain consultants specially retained. In the course of time, the seal of confidentiality has been removed from a large portion of the papers so that all but some 4,000 documents have been declassified.

More broadly, but no less importantly, the parties have agreed, through discussions among counsel, that all documents produced in discovery, whether or not confidential, were to be used "solely for the purpose of this litigation."

On January 29, 1976, counsel for GAF came to court with opposing counsel for an informal meeting to discuss the issue now treated. Counsel reported that there had been consultations on behalf of GAF with representatives of the Antitrust Division of the United States Department of Justice. The court was informed that some of the documents obtained in discovery from Kodak were believed useful to the Government in the sense that GAF deemed them indicative of antitrust misconduct. GAF's counsel desires to deliver, and the Antitrust Division desires to receive, these documents. Wisely sensing the donation might be open to question, counsel for GAF solicited the court's permission. Kodak resisted, seeking in effect a protective order of prohibition. Expressing tentative doubts as to the course GAF proposed, the court invited memoranda of law. The memoranda have been supplied, including one filed as amicus by the Department of Justice supporting GAF's position.

The papers report that we are concerned with 52 documents. Twenty five of these were initially classed as confidential, but 23 have been declassified. While only two thus remain subject to the confidentiality order, all 52 are within the understanding that documents produced were given solely for purposes of this litigation.

As to the law, learned counsel report remarkably little. Without summarizing the meagre authorities, none of which guides us decisively, a few may be mentioned here. GAF finds support in some of Judge Weinfeld's thoughts, always cogent, in *Baim & Blank, Inc. v. Bruno-New York, Inc.,* 17 F.R.D. 346 (S.D.N.Y.1955), where the actual ruling granted a protective order against an accountant's disclosure of discovered tax documents to parties other than

the litigant to which they had been given.[1] Kodak likewise mines Judge Weinfeld's works and discovers *Data Digests, Inc. v. Standard & Poor's Corp.*, 57 F.R.D. 42 (S.D. N.Y.1972), where there was a denial of a motion to vacate a protective order holding discovered materials in confidence, the rejected contentions including a professed purpose to deliver the materials to antitrust officials.[2] See also *In re Coordinated Pretrial Proceedings in Western Liquid Asphalt Cases,* 18 F.R.Serv.2d 1251 (N.D.Calif.1974); *Milsen Co. v. Southland Corp.,* 15 F.R. Serv.2d 1268 (N.D.Ill.1972). Other dictum cited by Kodak says, broadly, that the discovery procedures "are designed to be used solely for the purpose of obtaining information for use in the federal court action in which they are employed." *Beard v. New York Central Railroad Co.,* 20 F.R.D. 607, 609 (N.D.Ohio 1957). GAF counters with a thoughtful opinion which seemed to countenance in advance the revelation of discovered materials, after vacatur of a protective order of secrecy, "to interested Government agencies." *Essex Wire Corp. v. Eastern Electric Sales Co.,* 48 F.R.D. 308, 312 (E.D. Pa.1969); see also *Davis v. Romney,* 55 F.R.D. 337 (E.D.Pa.1972). Finally, our Brother Tenney has barred the use of civil discovery in a private action as a means of generating evidence for a criminal prosecution. *D'Ippolito v. American Oil Co.,* 272 F.Supp. 310 (S.D.N.Y.1967).

Writing upon a slate nearly clean, this court concludes that the permission GAF seeks should be denied and that the proposed delivery to the Government should be forbidden. The thoughts leading to this result, if by no means inexorably, are as follows:

1. GAF has the papers in question only by virtue of this law suit. There has been throughout an explicit understanding between the parties that discovery was being demanded and given solely for use in, and preparation of, this case. A considerable volume of papers has been given on consent. Sometimes there has been resistance, requiring recourse to the court. Some of the issues raised in motion papers have then been resolved by compromise, with or without the court's assistance. All the positions taken over the years have had presumably in view the understanding that discovery was for the party receiving it, not for strangers to the case, public or private. There is no need to conjecture whether either side construed or considered this understanding with particular reference to the Government as a prospective recipient of discovered papers. If speculation were in order, it might be supposed that the Government would not have been high on either side's list of exceptions for its own files. It is also unnecessary, and much too late, to wonder what different views the parties might have taken of discovery questions along the

---

1. In the dictum plaintiff quotes, Judge Weinfeld said (17 F.R.D. at 348):

   "Parenthetically, it is noted that the plaintiffs, upon the argument of the motion, consented to a full disclosure by defendant to governmental officials and agencies of any and all facts derived from the inspection and discovery. Of course, even without such consent the government may command this information."

2. The court said, *inter alia* (57 F.R.D. at 44, footnotes omitted):

   "The contention that the protective order should be lifted so as to enable plaintiffs to communicate the protected information to various governmental authorities in furtherance of the public interest is without substance. The governmental authorities, whether executive or congressional, if interested in obtaining the information, have the available means and power, subpoena and otherwise, to obtain or compel its production. The vindication of the public interest in the enforcement of the criminal laws rests with the Department of Justice and not with the plaintiffs who are asserting private antitrust claims. The plaintiffs here can play their role 'as private attorneys general' in protecting the public interest in the enforcement of the antitrust laws by proceeding to trial. The reward of treble damages and substantial fees in the event of recovery is intended to encourage such actions in the public interest. With the discovery process completed by both sides and trial imminent, the case should be tried in the courtroom under our adversary system; the issues are not disposed of by affidavits submitted on this motion, which abound in much rhetoric and reiterated charges but fail to meet evidential and relevancy requirements."

way had they contemplated delivery of their papers to public officials. See *In re Coordinated Pretrial Proceedings in Western Liquid Asphalt Cases*, 18 F.R.Serv.2d 1251 (N.D.Cal.1974). The supervening idea of disclosure to the Government must be judged (and burdened) by the understanding that this was never a proposed or expressly anticipated step when the papers were turned over to GAF in the first place.

The shared and explicit assumption that discovery in this case was for purposes of this case alone goes a long way toward denial of GAF's request without more. Attention should be paid, however, to points that buttress this conclusion and to contentions for GAF urged to sustain a contrary result.

2. The Government as investigator has awesome powers, not lightly to be enhanced or supplemented by implication. To be sure, this can be overstated. The Antitrust Division is scarcely overstaffed in light of its responsibilities. The fact remains that its inquisitorial powers are great, and certainly as great as Congress has determined they should be. Prior to the discovery devices available to any other litigant, the Division has the civil investigative demand, 15 U.S.C. § 1312 (1970), and, of course, the grand jury. The potent instruments of inquiry bear corollary limits of propriety. The powers explicitly granted for enforcement of the criminal laws must be used as they were intended, not diverted to purposes never authorized. See *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The civil investigative demand has analogous limitations on its use: notice of "the nature of the conduct constituting the alleged antitrust violation" is required to accompany the demand, 15 U.S.C. § 1312(b)(1), and, once received, material given in response to the demand is limited in its use and in who may see it. 15 U.S.C. § 1313(c) and (d).

The restrictions reflect a concern for the rights of privacy. There has rarely been a time in our history when that concern was more aroused. Ours is not an era for fashioning lightly, from conditions at best ambiguous, an arsenal of new implements for governmental intrusions.

3. The fact that GAF proposes at this time to deliver "only" 52 documents does not work wholly in favor of the proposal. The 52 are selected from hundreds of thousands. The selection is probably not animated by solicitude for Kodak or for Kodak's antitrust standing with the Department of Justice. The long and enormously costly process of search and selection becomes, under GAF's proposal, a potential benefit of great value to the Government (and, very possibly, to GAF), and a corresponding detriment to Kodak. Volunteered resources employed at large private expense are added to the authorized Government energies available against Kodak. That this particular defendant is a corporate giant (assailed by a plaintiff which is no pygmy) cannot obviate the unease engendered by the alliance. Congress, deciding authoritatively for all of us, has allocated resources to law enforcement, both civil and criminal. Sometimes it has given express encouragement to informants and other adjuncts, see *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 546–47, 63 S.Ct. 379, 385–86, 87 L.Ed. 443, 450–51 (1943). It is quite another thing for a court to sanction, and thus to encourage, the use of private litigants' devices as reinforcements for federal prosecutors, whether civil or criminal. The potential for oppression, against enterprises large and small, or against individuals, is not rendered imaginary by our inability to forecast it with clarity.

4. The Government argues as amicus for the "effective pursuit of its law enforcement function."[3] The prospects thus far suggested sound like possible civil proceedings. But there is no assurance of that and no evident reason why responsible federal officials, if the circumstances warranted criminal proceedings, should (or could) refrain from using the materials now sought. The court is unwilling to give its approval

---

3. Memorandum of Amicus Curiae 1.

to the use of private discovery as a possible supplement to federal grand jury proceedings.

■ 5. There is a familiar notion, cited by GAF, that all citizens owe a duty to report violations of the law to responsible authorities. See *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957); *Vogel v. Gruaz*, 110 U.S. 311, 316, 4 S.Ct. 12, 28 L.Ed. 158 (1884). That principle is fettered a little in the view this court takes today. But all principles are fettered by other principles. We have a profound commitment to the conception of the Government as an adversary litigant, confined in its powers. Some might argue that the adversary model is overdone, perhaps in this as well as other aspects. It may be that the sometimes romantic notion of the "private attorney general" should entail collaborative activity alongside the public attorney general. If that is to become an agreed conception, however, it should happen as a judgment of legislative policy, not as a judicial inference from rules fashioned for purposes of discovery in private litigation. Moreover, if the legislative judgment were ours, we might well conclude that the power of Government to investigate is not in clear and present need of enhancement.

6. The question came to this court upon the prudent and principled application of GAF for guidance. Would it have been a remediable "wrong" if GAF had simply handed over the papers (at least the 50 not held in confidence) to government counsel? The court is not prepared to give, or even to suggest, an affirmative answer to that question. We are reminded once again of the wisdom, so often stressed by Mr. Justice Frankfurter, that the answer flows from the question. The question, as it happens to have been put, is whether the court will permit use of the discovered documents in the manner proposed. Having refused permission, the court concludes as well that such use, in the circumstances here present, should be, and it is, forbidden.

It is so ordered.