**UNITED STATES of America,**
**Petitioner,**

v.

**GAF CORPORATION, Respondent,**

**Eastman Kodak Company, Intervenor.**

**No. 77 Civ. 2984.**

United States District Court,
S. D. New York.

April 12, 1978.

See also, D.C., 415 F.Supp. 129.

Bernard Wehrmann, Atty., Dept. of Justice, by Gerald H. Rubin, Charles V. Reilly, Eugene P. Hanson, Daniel J. Pearlman, New York City, of counsel, for petitioner United States.

Skadden, Arps, Slate, Meagher & Flom, Washington, D. C. by John C. Fricano, Washington, D. C., of counsel, Simpson, Thacher & Barlett, Washington, D. C., for respondent GAF Corp.

Donovan, Leisure, Newton & Irvine, Washington, D. C. by John Doar, James A. McGee, of counsel, for intervenor Eastman Kodak Co.

**OPINION AND ORDER**

OWEN, District Judge.

This is a case of first impression arising under the 1976 amendments to the Antitrust Civil Process Act. At issue is whether compulsory process, called a civil investigative demand, can be used by the Antitrust Division of the United States Department of Justice to obtain from one party to a treble damage suit certain documents its adversary has furnished it pursuant to pretrial discovery.

In April 1973, GAF Corporation (GAF) commenced a private antitrust suit against its competitor Eastman Kodak Company (Kodak) in this court, the action being assigned to Judge Marvin E. Frankel. To facilitate discovery, the parties entered into a stipulation whereby either party could mark documents sought by the other party "confidential." Documents so marked, when turned over to the opposing party's attorneys, could be disclosed only to employees or consultants retained by the attorneys for the purposes of that litigation, and

to the court. If the attorneys receiving such a document desired to disclose it to anyone else or use it for any purpose other than the conduct of the litigation at hand, they could seek the producing party's permission, or failing that, the court's permission. In the absence of such special dispensation, however, matter marked "confidential" was to be used "solely for the purpose of conducting this litigation and not for any other purpose." This stipulation was made an order of the court by Judge Frankel on November 30, 1973.

During the year that followed, some 400,-000 documents were turned over by Kodak to GAF's attorneys, who sifted, analyzed, and categorized them in an effort to build their case. From this mass of material, GAF's lawyers selected fifty-two documents that they considered to be persuasive evidence of antitrust violations. It was—and still is—their desire to turn these documents over to the Antitrust Division, along with their explanatory memorandum.[1] They contend that it is their civic duty to report evidence of violations of the law to the appropriate authorities; it is not a secret, however, that such a move would also be good litigation strategy, since the initiation of a government action against Kodak during the pendency of GAF's civil action could be very helpful to GAF.

The Antitrust Division, for its part, has been eager to receive this carefully selected set of documents and GAF's legal analysis of them. Twenty-five of these documents, however, had been initially produced by Kodak subject to the confidentiality stipulation, and although most had been declassified by the end of 1975, two still remained subject to that order. To be safe, GAF sought the court's authorization to disclose the contents of all fifty-two documents to the government in its investigation of Kodak.

In *GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129 (S.D.N.Y.1976), Judge Frankel concluded that GAF should not be permitted to turn over to the government *any* discovered documents or analyses based upon them. In doing so, he relied in part upon his observation that

> the parties have agreed, through discussions among counsel, that all documents produced in discovery, whether or not confidential, were to be used "solely for the purpose of this litigation."

*Id.* at 130.

Later that year there was enacted a substantial expansion of the investigatory powers of the Antitrust Division.[2] Prior thereto, the Division could issue a civil investigative demand (CID) only to a company under investigation, and only for the production of documents. As amended, the statute now authorizes such demands to be made upon natural persons as well as juridical persons, upon non-targets as well as targets of the Division's investigations, and for non-documentary as well as documentary evidence.

Pursuant to this new power, the Antitrust Division, on March 29, 1977, served upon GAF its CID No. 1750, which commanded GAF to turn over not only the fifty-two documents and the legal analysis which were the subject of Judge Frankel's ruling, but also all other documents produced by Kodak in connection with the GAF litigation. GAF, though it was eager to comply, declined to do so for fear of violating Judge Frankel's order. Kodak, though not favoring the government having these documents, offered to supply them itself, presumably in the hope that the government would make its own *de novo* evaluation, free from GAF influence. The Antitrust Division, though it was anxious to

---

1. This is, however, obviously not the more usual and unquestionably permissible situation in which attorneys for a corporate client, suffering antitrust violations at the hands of a competitor, assemble the relevant documents of the competitor received in the regular course of business and forward it to the Antitrust Division with an explanatory covering letter.

2. Hart-Scott-Rodino Antitrust Improvements Act of 1976, Title I (Antitrust Civil Process Act Amendments), Pub. L. No. 94–435, 90 Stat. 1383–90 (amending Antitrust Civil Process Act, 15 U.S.C. §§ 1311–1314 (1970)).

obtain the documents, declined Kodak's offer because it preferred to receive them as screened and analyzed by GAF's antitrust counsel.

The Antitrust Division undertook to break this stalemate by petitioning the court, pursuant to 15 U.S.C. § 1314(a) (1976), for an order compelling GAF to comply with CID No. 1750. Apparently realizing that Kodak had a substantial interest in any such proceeding, the government appropriately informed Kodak of this step. Kodak thereupon moved to intervene as of right in what otherwise would have had the appearance of a collusive suit between the United States and GAF. By order dated September 15, 1977, I granted Kodak's motion for intervention. The matter now has been fully briefed on all sides, and the issue is squarely presented: Do the 1976 antitrust amendments authorize the Antitrust Division to obtain from GAF documents furnished by Kodak, as processed by GAF's attorneys, notwithstanding the documents' availability from Kodak and notwithstanding the various confidentiality stipulations, understandings, and orders to which these documents have been subject throughout the years of litigation between GAF and Kodak?

The government argues in essence that the amended statute is clear on its face. In language carried over from the original version,[3] the statute authorizes the issuance of CIDs to any person "in possession, custody, or control of any documentary material . . . relevant to a civil antitrust investigation." 15 U.S.C. § 1312(a) (1976). GAF, through its attorneys, is manifestly in custody of relevant Kodak documents; therefore the government contends that it has an unequivocal right to obtain those documents from GAF.

The statutory scheme, however, is not quite that simple, and the phrase upon which the government relies cannot be read in isolation. To put the phrase into context, it is necessary to take into account the constant concern of Congress that the investigatory powers of the Antitrust Division be balanced against the rights of parties under investigation.

As originally enacted, the Antitrust Civil Process Act safeguarded the rights of target companies in many ways. For example, their trade secrets, financial data, and other confidential matter produced in response to a CID were protected by a provision that none of the material "so produced shall be available for examination [by anyone outside the Department of Justice], without the consent of the person who produced such material."[4] And the statute provided further that if the Justice Department's custodian for such documents were thought to be inadequately safeguarding any material delivered "by any person in compliance with [a CID], such person may file, in the district court . . . a petition for an order of such court requiring the performance by such custodian of any duty imposed upon him" by the Act.[5]

In expanding the investigative powers of the Antitrust Division in 1976, it was Congress' intent to expand correspondingly the Act's safeguards for the private companies and individuals—targets and nontargets alike—subject to those powers:

> The original Antitrust Civil Process Act of 1962 provided for a number of procedural safeguards to protect the public against the potential for abuse of the Department's precomplaint discovery process for corporate documents. These procedural safeguards have been continued and expanded to cover the additional precomplaint discovery powers granted by this title . . . .. The Committee is confident that the provisions of the amended Antitrust Civil Process Act strike a fair balance between the rights of persons under investigation and third parties against unreasonable government

---

3. Antitrust Civil Process Act, § 3(a), 76 Stat. 548, 15 U.S.C. § 1312(a) (1970).

4. Antitrust Civil Process Act, § 4(c), 76 Stat. 550, 15 U.S.C. § 1313(c) (1970).

5. Antitrust Civil Process Act, § 5(c), 76 Stat. 551, 15 U.S.C. § 1314(c) (1970).

intrusion and the need for effective and efficient enforcement of the antitrust laws. S.Rep. No. 803, 94th Cong., 2d Sess. 26–27 (1976). In carrying out this intent, Congress carried over *in haec verba* such protective measures as those quoted above,[6] as well as adding new safeguards specifically designed to match the new powers being incorporated into the Act.

Against this background, it is difficult to imagine that Congress intended by its 1976 amendments to empower the Antitrust Division to obtain documents of a target company from an adversary in litigation that had obtained them in the course of such litigation, merely because the adversary was temporarily "in possession, custody, or control" of them. If the statute were to be read that literally, it would follow from the wording of the statutory "safeguards" that once the target company's documents were in government hands, further disclosure would be entirely within the discretion of the target's adversary. Such a reading of the statute is inconsistent with Congress' carefully wrought system of powers balanced by safeguards.

The Antitrust Division here seeks to avoid this result by reading certain further limitations on governmental power into the amended Act, so as to protect the target's interest in the confidentiality of its documents even when the person who produced them would just as soon make them public. So read, the statute could permit the government to obtain Kodak's documents from GAF, and at the same time limit further dissemination of the documents except insofar as Kodak (rather than GAF) consents. The issue, however, is not whether the statute can be read as the Executive Branch now wishes it had been written, but rather whether Congress *intended* it to be so construed.

The very structure of the statute, as we have seen, makes it clear that Congress did not contemplate that efforts would be made under the Act to obtain a target's documents from an adversary litigant; otherwise Congress would surely have drafted the statute so as to provide explicit protections for the target in such cases. To find out what Congress did envision under the amended Act, we need only look to the relevant committee reports:

> Customers, suppliers, competitors, former employees and trade associations often possess information that is vital to a particular investigation and it is important that the Division have a means of access to this information.

S.Rep. No. 803, 94th Cong., 2d Sess. 15 (1976); *see also id.* at 16.

H.R. 13489 broadens these limited, current investigative powers by authorizing the Division to issue CIDs for:

> .    .    .    .    .
>
> [Documents] [f]rom "targets" and "non-target" third parties with relevant information, such as the target's competitors, officers, franchisees, distributors, or customers  .    .  ..

H.R.Rep. No. 1343, 94th Cong., 2d Sess. 2 (1976), [1976] U.S.Code Cong. & Ad.News 2597. Absent from these lists is any third party—such as an adversary in a lawsuit—which might have obtained possession of target's documents other than in the ordinary course of business.

As this case illustrates, there are sound policy reasons why Congress might have chosen to draw the line short of allowing the Antitrust Division to obtain a target's documents as organized by an adversary litigant. The adversary has a clear interest in presenting the target's documents in the most unfavorable light possible. While the government here has and acknowledges a duty to analyze the documents independently, the Antitrust Division would not be pursuing this demand if it did not intend to rely heavily upon the work of GAF's attorneys. It is entirely possible that in plowing through numerous Kodak documents the

---

**6.** Thus the language quoted in text accompanying note 4, *supra*, appears in 15 U.S.C. § 1313(c)(3) (1976), and the language quoted in text accompanying note 5, *supra*, appears in 15 U.S.C. § 1314(c) (1976).

Division's staff, even with the best of intentions, would overlook exculpatory material not called to their attention by GAF's attorneys, and thus perhaps be improperly influenced by the specific documents highlighted by GAF.

In short, the Antitrust Division here, in connection with what it concedes should be an unbiased investigation of Kodak, seeks to avail itself—at least in the first instance—of the work of private attorneys who have the strongest possible bias. Judge Frankel declined to authorize this step by judicial fiat, 415 F.Supp. at 132–33, and there is every indication that Congress has declined to do so by statute.

An appealing argument for allowing the turnover is the potentially enormous saving of time and expense to Antitrust Division personnel who would otherwise have to review the same plethora of initial material—assuming it came directly from Kodak—and possibly, but not necessarily, winnow it down to the same key documents. Fairness to the target company and congressional intent, however, are overriding considerations.

Given the relatively clear conclusion to be drawn from the foregoing considerations, it is unnecessary to consider what weight the history of agreements and orders of confidentiality in the case before Judge Frankel, and the alternative availability of these documents directly from Kodak, might have had if the legislative history of the 1976 amendments had been more equivocal.

The petition of the United States for an order to enforce Civil Investigative Demand No. 1750 is denied.

So Ordered.