**UNITED STATES of America,
Petitioner-Appellant,**

v.

**GAF CORPORATION,
Respondent-Appellee,**

**Eastman Kodak Company,
Intervenor-Appellee.**

No. 208, Docket 78–6102.

United States Court of Appeals,
Second Circuit.

Argued Nov. 22, 1978.

Decided Feb. 9, 1979.

Rehearing Granted in Part and Denied in Part March 15, 1979.

Robert J. Wiggers, Dept. of Justice, Washington, D. C. (John H. Shenefield, Asst. Atty. Gen., Barry Grossman, Washington, D. C., and Ralph T. Giordano, Dept. of Justice, New York City, of counsel), for petitioner-appellant.

Stephen M. Axinn, New York City (Irene A. Sullivan, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for respondent-appellee.

Richard E. Carlton, New York City (Jerrold J. Ganzfried, Sullivan & Cromwell, New York City, of counsel), for intervenor-appellee.

Before MULLIGAN and GURFEIN, Circuit Judges, and WEINSTEIN, District Judge.*

* The Honorable Jack B. Weinstein, U. S. District Judge, for the Eastern District of New York, sitting by designation.

1. In *Aluminum Company of America v. Department of Justice,* 444 F.Supp. 1342 (D.D.C.1978) (Gasch, J.), a CID was the subject of litigation,

GURFEIN, Circuit Judge:

This is an appeal by the United States from an order of the District Court for the Southern District of New York (Hon. Richard Owen) denying a petition by the United States for enforcement of a civil investigative demand ("CID") upon GAF Corporation ("GAF"). *United States v. GAF Corp.,* 449 F.Supp. 351 (1978). The amended Antitrust Civil Process Act, 15 U.S.C. § 1311 *et seq.,* authorizes the Department of Justice to issue civil investigative demands to obtain from third parties documents relevant to suspected antitrust violations committed by the target of investigation. The target here is intervenor, the Eastman Kodak Company ("Kodak").

The central issue is whether the Department of Justice may, by issuing a CID, obtain from a private antitrust plaintiff (GAF) documents which the latter has received through discovery proceedings in a private action against the target of the antitrust investigation (Kodak), together with work memoranda prepared on the basis of those documents. Resolution of that issue involves construction of the 1976 Amendments to the Antitrust Civil Process Act, 15 U.S.C. § 1311 *et seq.,* and their effect upon a protective order in the original private suit that restricts the Government's access to the product of that litigation's discovery.[1]

On January 29, 1976, before the enactment of the Amendments mentioned,[2] GAF Corporation, plaintiff in an antitrust action brought against Kodak in the Southern District of New York (Hon. Marvin E. Frankel), sought permission from the trial judge to transmit to the Justice Department some fifty-two documents that had been secured through discovery, together with a memorandum of analysis of the documents. Al-

but no question was involved concerning the use of a CID in seeking documents already discovered in private litigation.

2. The Amendments were not enacted until September 30, 1976. 90 Stat. 1383.

though only two of the documents remained classified under a prior order, then Judge Frankel, on May 18, forbade GAF to turn over any of the fifty-two documents (and by implication the memorandum based upon them). *GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129.[3] The District Judge reasoned that the initial discovery process had been aided by a cooperative relinquishment on Kodak's part pursuant to an explicit understanding that discovery was being given solely for use in the case. It is interesting to note, however, that there was no clearcut understanding, as my dissenting brother Mulligan seems to assume, that the parties deliberately excluded the Government in their "explicit agreement." For Judge Frankel put it this way:

There is no need to conjecture whether either side construed or considered this understanding with particular reference to the Government as a prospective recipient of discovered papers.

415 F.Supp. at 131.

The Judge declared that the Government's interest was "in use of these materials for potential 'law enforcement' purposes not clearly specified or specifiable in advance." 415 F.Supp. at 130. Moreover, recognizing that the real value of GAF's "gift" to the Government lay in the legal labors expended in the selection and analysis of relevant documents, Judge Frankel expressed concern about the potential for oppression in an alliance between private and Government resources directed against Kodak, particularly in "the use of private discovery as a possible supplement to federal grand jury proceedings." 415 F.Supp. at 133.

Almost on the heels of this decision, but without taking note of it, Congress passed the Hart-Scott-Rodino Antitrust Improvements Act of 1976, P.L. 94–435 (Sept. 30, 1976), which, among other things, expanded the Justice Department's authority to issue CIDs for information relevant to the investigation of possible antitrust violations. Whereas previously CIDs could be issued

only against the target of an investigation, the Amendments conferred authority to issue a demand against "any person" possessed or in custody of "documentary material" or "information" (*e. g.,* oral testimony) relating to a civil antitrust investigation, 15 U.S.C. § 1312(a). Equipped with this enlarged grant of power, the Justice Department began a fresh effort to obtain GAF's Kodak materials. It issued two CIDs: (1) against GAF for the materials originally sought before Judge Frankel, including the analyses of discovered documents, as well as the other documents GAF received in discovery from Kodak *plus* indices and (2) against *Kodak* for relevant papers not given to GAF. Kodak offered to supply all the requested documents to the Government itself, presumably in the hope that the Government would make its own *de novo* evaluation of whether there is a tenable claim against Kodak, free from GAF influence. The Antitrust Division, though it was anxious to obtain the documents, declined Kodak's offer because it preferred to receive the documents "as screened and analyzed by GAF's antitrust counsel." *See United States v. GAF Corp., supra,* 449 F.Supp. at 352–53. The Government then petitioned for enforcement of its CID against GAF in the District Court below, 15 U.S.C. § 1314. *United States v. GAF Corp., supra* (Hon. Richard Owen).

Judge Owen denied the petition based upon his interpretation of the amended Antitrust Civil Process Act as *precluding* a demand for documents of a target company that are temporarily in the custody of a litigation adversary, obtained through discovery. The court recognized that a literal reading of amended § 1312(a) favored the Government's position. It reasoned that if the statute were to be read literally, however, the provision in § 1313(c)(3) must also be read literally. That subsection provides that no material obtained by CID may be made available for examination by anyone other than the Department of Justice "without the consent of the person *who*

---

3. Judge Frankel has since resigned from the bench. The GAF–Kodak case has been trans-    ferred to the docket of the Hon. Lawrence W. Pierce.

*produced* such material, etc." (emphasis added).

The court thought that, interpreted literally, this would mean that GAF, as "the person who *produced* such material," could consent to its further examination by strangers without the permission of *Kodak.* That result, of course, would place Kodak's interest in the privacy of its business documents at the mercy of its adversary and competitor. The Judge held accordingly that since Congress did not specifically authorize CIDs for documents obtained from the target in the course of litigation nor provide explicit protection for the target's interest in their confidentiality, the authority granted to the Department of Justice with respect to third parties should be limited to materials obtained by such third parties in the regular course of their business, excluding materials obtained by discovery in litigation. Finally, the Judge concluded that it would be unfair to Kodak for the Government to have its investigative course suggested, at least partially, by a private adversary litigant. At the same time, the judge acknowledged the "potentially enormous saving of time and expense to Antitrust Division personnel who would otherwise have to review the same plethora of initial material . . . ." 449 F.Supp. at 355.

## I.

■ Though we think the reasoning of the court below is not without some appeal, we have concluded that we can find no manifestation of congressional intent to place materials obtained in discovery—or analyses based thereupon—outside the grant of power for enforcement of CIDs.

The fundamental dispute here is whether the Justice Department may—with GAF's consent and even encouragement—seek the product of GAF's *legal analysis* of Kodak papers. Both the language of § 1312[4] ("any person") and the legislative history evince a congressional intent to provide the Department of Justice—through the Amendments—with broad civil antitrust investigatory powers, subject only to important and particular safeguards against abuse of privacy or other interests. Congress recognized that CIDs would be used to collect basic information on the behavior of the market and its actors—data such as are found in Kodak's original documents. *See* H.Rep.94–1343, 94th Cong., 2d Sess. 7, 23 (1976); S.Rep.94–803, 94th Cong., 2d Sess. 15–16 (1976), U.S.Code Cong. & Admin.News 1976, p. 2572. But the CID power was not to be limited to acquisition of factual data. The legislative history shows that Congress contemplated that the Government would use its power to issue demands for the purpose of gaining "expert opinion" from customers, trade associations, suppliers and competitors. S.Rep.94–803 at 19. Thus, CIDs were made available for use in gathering third-party analyses, as well as relevant information. *Id.* at 19–20. There is nothing in the legislative history which indicates that an *analysis* of documents as a commentary on the antitrust implications of those documents should be excepted from the reach of the CID power.

The contention that the Antitrust Civil Process Act permits collection of "neutral" views only, but not of "biased" opinion, such as that generated by litigation adversaries, is simply not tenable. Congress emphasized the usefulness of the CID when it is directed to competitors or the possibly

---

4. 15 U.S.C. § 1312 now reads as follows:
(a) Civil investigative demands—Issuance; service; production of material; testimony
Whenever the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, has reason to believe that any person may be in possession, custody, or control of any documentary material, or may have any information, relevant to a civil antitrust investigation, he may, prior to the institution of

a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such documentary material for inspection and copying or reproduction, to answer in writing written interrogatories, to give oral testimony concerning documentary material or information, or to furnish any combination of such material, answers, or testimony.

aggrieved customers of the target of the investigation, *see* H.Rep.94–1343 at 7; S.Rep.94–803 at 19–20; surely such parties were not expected to be free from bias. Indeed, Congress grappled with and disposed of the bias question when it rejected arguments that target companies should have the opportunity to be present at the depositions of third parties. S.Rep.94–803 at 20–21. In short, we find nothing in the legislative history that places this subject matter or this party outside the scope of the statutory antitrust civil process, subject to proper safeguards.

The Government often relies on complainants and informants with a personal stake in the outcome to aid in its investigation. The assumption is that if there is self-interest or even prejudice in the help afforded, the Government officials will not be poisoned, but will perform their statutory duty in an ethical manner. *Cf. Hyster Co. v. United States,* 338 F.2d 183, 186 (9th Cir. 1964). In the search for truth the Government is entitled to the help of every citizen. Indeed, if ultimately the Government concludes that Kodak has committed no antitrust violation, it will be to the benefit of Kodak to have a speedier end to the investigation than would have otherwise occurred. As the Department of Justice wrote to Chairman Rodino when the bill was pending before a subcommittee of the House Judiciary Committee:

> It is important to remember that the Department's objective at the pre-complaint stage of the investigation is not to "prove" its case but rather to make an informed decision on whether or not to file a complaint. In over 80% of our investigations in which CIDs are issued [under the old law before the 1976 Amendments], we ultimately decide not to file a case.

H.Rep.94–1343 at 26, U.S.Code Cong. & Admin.News 1976, p. 2620. If GAF's analysis should seem to present its very best foot forward, and that should fail to impress the Department of Justice, a result satisfactory to Kodak could conceivably be reached at an early stage.

What is of unique value to the Government in obtaining Kodak documents from GAF is that they have been exposed to sifting and study by GAF's attorneys. By requesting *selected* materials and indices, as a guide to further inquiry, the Justice Department hopes to gain easier access to the critical facts. Similarly, analytical memoranda turned over by GAF can be of assistance in the interpretation of the accumulated data.

■ We turn, then, to Judge Owen's understandable concern lest the confidentiality of the Kodak records turned over by GAF be subject to disclosure by the Government to outsiders, without Kodak's authorization, on the ground that Kodak would not actually be considered the "person who *produced* such material." That concern was premised on a literal reading of § 1313(c)(3) as conferring the power of consent over further disposition of documents in Government hands only upon the party which physically yielded them under a CID. But we construe § 1313(c)(3) differently, as vesting that authority to consent in the real party in interest—the owner of the documents—rather than in a party who, having temporary possession of papers for a limited purpose, physically transmits them to the Government. Our construction of § 1313(c)(3) is compelled in order to make sense of Congress' explicit approval of the issuance of CIDs against agents with temporary custody of corporate papers. *See* S.Rep.94–803 at 14–15. It is highly implausible that Congress intended that when a CID is directed against a former target company employee who has retained possession of some of the target's documents, the employee should have the legal authority to give the only effective consent required for further distribution because he happens to be the "person who [literally] *produced* such material." By the same token, we do not read § 1313(c)(3) as vesting sole authority to consent to disclosure in an entity in temporary custody of documents because of litigation. A company like Kodak, as the real party in interest, should be deemed to have been the "person who produced" the docu-

ments[5] for purposes of the consent required.[6]

In any event, it has been held that a CID may be subjected to a protective order by the court which is asked to enforce it, *Aluminum Company of America v. Department of Justice, supra,* and we agree. *See* H.Rep.94–1343 at 10. Thus, the danger that the Government may show the materials to strangers can be judicially controlled by a condition to the enforcement order. An enforcement order in this case, accordingly, should specifically prohibit the Government from any further disclosure without the consent of Kodak as the "producer" of documents under § 1313(c) (except to GAF counsel who have already seen the documents).

Kodak cites only one case which, it believes, supports by analogy its claim that an administrative agency's powers (like those of the Department of Justice) are not broad enough to obtain documents held pursuant to previous discovery in a civil suit. *Zenith Radio Corp. v. Matsushita Electric Indus. Co.,* 1978–1 Trade Cases ¶ 61,961 (E.D.Pa. 1976). The District Court in *Zenith* did deny to the International Trade Commission the right to enforce an investigative demand for discovered documents, but the denial was based upon a determination that the documents were or should be under a protective order, not that the Agency lacked power to demand discovered documents. The case is, therefore, irrelevant to our resolution of the question of construction of the statutory *power* of Justice to issue a CID for discovered material.

Finally, we observe that we think it unlikely that private litigants will hold back discovery in what are already serious treble damage suits merely because of an additional threat of a CID directed to an adversary for discovery by the Antitrust Division.

Nor are we impressed with the vague suggestion that if the Government obtains copies of documents during the course of litigation, that will somehow obstruct the management of the private litigation. If there should be any attempt at real oppression, the District Courts are competent to prevent its consummation in their discretionary authority.

**II.**

Except where inconsistent with the context of the Antitrust Civil Process Act, enforcement of a CID may be resisted on the same grounds as enforcement of a subpoena in ordinary civil litigation. *See* 15 U.S.C. § 1312(c)(2); *Aluminum Company of America, supra,* 444 F.Supp. at 1345–46. Here GAF has asserted no objection to turning over the product of its legal labor. The only basis for prohibiting enforcement of the CID is that some or all of the Kodak documents held by GAF are under a protective order that precludes Government access.[7] *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 1978–1 Trade Cases ¶ 62,019 (E.D.Pa.1978) (court will not enforce a subpoena of documents under protective order in a separate administrative proceeding); *Union Carbide Corp. v. Filtrol Corp.,* 278 F.Supp. 553, 555–56 (C.D.Cal.1967) (court conditions discovery of depositions taken in another case upon vacation or modification of protective order of court in which depositions originally taken); *cf. Olympic Refining Co. v. Carter,* 332 F.2d 260, 262 (9th Cir.), *cert. denied,* 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964) (effort to vacate protective orders in one proceeding as predicate to discovery in another); *American Securit Co. v. Shatterproof Glass Corp.,* 20 F.R.D. 196 (D.Del. 1957) (same).

5. This would include GAF memoranda revealing the nature and content of the Kodak documents. *See* note 11, *infra.*

6. Indeed, though the papers in dispute were not literally "produced" by Kodak, Judge Owen quite sensibly permitted Kodak to intervene in the enforcement proceeding against GAF, because its interests were involved. *Compare* 15 U.S.C. § 1314(a) and (b).

7. Although we have in view primarily Judge Frankel's general protective order of May 18, 1976, our discussion in this section applies with equal force to any prior protective orders still outstanding.

■ The existence of an outstanding protective order is not in itself fatal to the Government's effort to obtain the documents. Such orders are subject to modification to meet the reasonable requirements of parties in other litigation, for example. *See Ex parte Uppercu,* 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915) (directing lower court to permit sealed documents to be obtained by non-party to original litigation); *Olympic Refining Co. v. Carter, supra.*

■ An application for the modification of an existing protective order normally should be made to the judge who is in control of the private litigation in which it is still pending.[8]

Partial retention of the protective order against transmission of papers to the Department of Justice because of an alleged continued need for confidentiality against the Government lies in the discretion of the District Judge.[9] Beyond this, however, to give added force to our interpretation of § 1313(c), an order enforcing the CID should be conditioned specifically, as we have indicated, upon the Government's agreement that, *to the extent that the statute requires consent* for *further* Government disclosure of documents obtained by CID to outsiders, Kodak will be treated as the "person" whose consent is required.[10] That will apply to Kodak-originated papers obtained by the Government from GAF, as well as to GAF memoranda which are based upon or related to those Kodak-originated papers.[11] A list of all Kodak documents turned over to the Government by GAF should be given to Kodak.

■ In sum, we hold that, as a matter of statutory authority, a CID may be enforced against a party for documents which it has obtained from the target in discovery. We uphold the power of the District Court, however, to superimpose upon any enforcement orders such protective orders as may be required to safeguard the interests of the parties in the particular circumstances. *See Aluminum Company of America v. Department of Justice, supra.*

Reversed and remanded for further proceedings in conformity with this opinion.

MULLIGAN, Circuit Judge, dissenting:

I respectfully dissent. My brother Gurfein has fully and fairly set forth the facts which in any event are not really disputed. When GAF brought its antitrust action against Kodak in 1973, counsel for both parties entered into an explicit agreement that Kodak would produce documents at the discovery stage but solely for the purposes of that suit and no other. Pursuant to that understanding Kodak surrendered some 400,000 documents, and GAF counsel and economists dutifully indexed and analyzed them to determine their antitrust significance. We were advised on the oral

---

8. In the future, the District Court might consider a direction to its Clerk to treat any application for enforcement of a CID under 15 U.S.C. § 1314 for discovery of litigation documents in a pending civil action as a related case to be assigned to the judge handling that action.

9. Any partial continuation against the Government of the protective order should be predicated upon a particular showing of the need for protection of specific materials, so that the statutory power we have upheld will not be defeated by a too narrow application in the particular case.

10. Section 1313(c) does permit the Government to reveal materials obtained by a CID in the course of taking oral testimony without the consent of the "person" who produced them. The District Court, may, however, in its discre-

tion, subject individual documents passed on to the Government to an order barring unconsented use of such documents in the deposition process. That sort of order—which creates a further safeguard for confidentiality than that provided under § 1313(c)—would be available upon a demonstration that extraordinary protection should be afforded to designated materials because of their special confidential nature or in other interests of justice.

11. We emphasize that disclosure to outsiders of the GAF memoranda will not only require Kodak's permission but also the consent of GAF, since it has a significant interest in the disposition of the fruits of its work. Similarly, the disclosure to Kodak of the GAF memoranda by the Government would require the consent of GAF.

argument of this appeal that this exercise cost GAF some two million dollars. When the Antitrust Division of the United States Department of Justice in 1976 indicated its interest in the documents and naturally in the professional opinion of the stable of cognoscenti assembled by the plaintiff, GAF was understandably anxious to provide them. Judge Frankel, however, held that the documents, the indices and the interpretative comments were by express agreement to be utilized solely for the purposes of the private lawsuit. *GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129 (S.D. N.Y.1976). No one seems to question the propriety of the protective order which he issued. Subsequently, Congress enacted the Antitrust Improvements Act of 1976, P.L. 94–435, which *inter alia* permitted the Government to issue a Civil Investigative Demand (CID) against non-target persons who were in possession of "documentary material" or "information" which related to a civil antitrust investigation.

The Department of Justice thereupon served GAF with a CID requesting the Kodak documents as well as the analyses of the GAF experts whether in final or draft form. While GAF was obviously eager to comply, it was understandably concerned with Judge Frankel's protective order. Despite the passage of the Amendments, GAF resisted the demand, precipitating this litigation. Served with a similar CID, Kodak did not resist and remains perfectly willing to supply all documents sought by the Government. The Department of Justice, however, was not interested in the Kodak documents but covets the analyses of GAF antitrust counsel and economists. When Kodak sought to intervene in the "friendly" law suit brought by the United States against GAF, both parties initially objected. Judge Owen, realizing that there was no justiciable controversy absent a party with an interest adverse to that of the Government, permitted Kodak's intervention. GAF, which has filed its brief and argued as an appellee now in alliance with its purported adversary, seeks a *reversal* of his decision, which in effect sustained the prior protective order in the face of the Antitrust

Improvements Act of 1976. This is a peculiar posture indeed for an appellee, but the intervention of Kodak, I presume, preserves justiciability.

In any event I think Judge Owen reached the proper conclusion. GAF is not, as the majority would have it, merely a competitor-informant, a good citizen, surrendering information obtained in the ordinary course of business to a governmental regulatory agency. The documentation it has collected and the self-serving analyses which this permitted, were provided with the understanding that they were to be used only in that private litigation. This has been judicially determined and is undisputed. I fail to understand how a statute subsequently enacted by Congress may be interpreted to void the terms of an agreement freely entered into by sophisticated parties several years prior to its passage. On the contrary, it is in the ultimate interest of the Government and business that such agreements, which are perfectly lawful and equitable, be now observed and respected. I see nothing in the Act or in its legislative history which would permit the evisceration of such an agreement. I would not contort the statute to reach what appears to me a perverse result unless there be a clear expression of congressional intent that prior agreements between parties were to be abrogated. There is none.

The Government argues in effect that it will save the taxpayers millions of dollars if it has the advantage of the GAF analysis. At the same time it argues that it will not be deterred from an objective analysis despite the obvious partiality of the GAF interpretation. How much it will cost the Government to make a contrary analysis and balance the scales we are not told. The question of money seems to me to be totally irrelevant since the issue involves a basic question of business morality and the observance of contract provisions. In view of the highly sophisticated and complicated issues obviously involved, I believe it would be more appropriate for the Government, which has been given complete access to the Kodak documents, to make its own *de novo*

and unjaundiced determination of monopolization, if there be any. When the private action is tried and determined the Government will have access to the record and the expert opinion it seeks. I do not believe there is any peril to the Republic if the Government waits until the private attorneys general proceed to enforce the Sherman Act. This course also permits the parties to observe the terms of their discovery agreement. I would therefore affirm.

## On Petition for Rehearing

GURFEIN, Circuit Judge:

Eastman Kodak ("Kodak") petitions this court, pursuant to Rule 40 F. R. App. P., for rehearing of certain limited aspects of our opinion of February 9, 1979 (596 F.2d 10). We grant the petition and modify our opinion in certain respects.

The petition does not contest the statutory construction of the Antitrust Civil Process Act in the majority opinion. It suggests, rather, that since Judge Owen did not reach any other question after he held the antitrust civil investigative demand (CID) to be invalid, this court should not have given its views on the issues remaining. It also suggests that a panel opinion by Judge Mansfield, concurred in by Judges Medina and Meskill, *Martindell v. ITT*, 594 F.2d 291 (1979) would, in any event, require a different conclusion. In short, the petition requests that we limit our opinion to the issue of the Government's power to seek by a CID documents received by a third party in discovery and that we remand to the District Court's general discretion the determination whether, and if so to what extent, the existing protective order should be amended. The suggestion is made explicitly that *ITT, supra,* is contrary to our

view on the continuation of the protective order.

The *ITT* panel did not deal with a CID authorized by a statute. Indeed, the standing of the Government was ambiguous enough to require several pages of discussion. Moreover, what was sought by the Government in *ITT* was the *deposition testimony* of witnesses on a matter delicate enough to have counselled the invoking of a claim of constitutional privilege against self-incrimination, which claim of privilege was foregone on an explicit agreement between the parties sanctioned by a protective order for limited use of that testimony.

The key to the distinction in Judge Mansfield's characteristically careful opinion is the following:

> . . . we are not called upon in the present case to decide whether the Government might be entitled to *enforcement of a subpoena* compelling production of the depositions. Moreover, although the Government, in *GAF* and *Zenith,* may have been seeking merely to short circuit statutory procedure in the interest of saving time and money, here it would be, under its own argument, creating a discovery power *it does not presently possess.*

296 n.6 [Emphasis added].[1]

We noted in our opinion, of course, that the CID power was granted to the Government in antitrust cases by Congress *after* the *GAF* opinion cited.

In this case for the first time, we deal with a statutory subpoena. We do not deal with testimony given for a limited use, but with documents concededly available to the Government by original subpoena to Kodak

1. The *Martindell* panel has amended its slip opinion to include as footnote 8 the following:
   Our decision in this case is consistent with *United States v. GAF Corporation,* 596 F.2d 10 (2d Cir. 1979), which recognizes, as do we, that in an appropriate case the district court may, upon a proper showing in the exercise of its discretion, grant an application by the Government pursuant to its *statutory* enforcement power (antitrust civil investigative demand) for modification of a protective order entered in civil litigation between others to permit inspection of documents covered by the order. The reliance of a private party upon protection of pre-existing documents from disclosure to the Government would normally be more difficult to justify than that of a witness who would, absent the protective order, have invoked his privilege and given no testimony at all.

plus an analysis by its civil adversary's lawyers. Our opinion does not give the Government access to anything specific without more.

The lifting of the protective order would simply permit, in the District Judge's discretion, the legal analysis memoranda, which discuss documents received in discovery, to be turned over to the Government pursuant to what we have determined to be a valid CID.

We issued an opinion which, we believe, balanced the equities, that is, the new statutory mandate supported by congressional policy in antitrust matters and the existence of a protective order.

We do not agree with Kodak that our opinion "would reward GAF and the government for studiously avoiding the proper procedure of presenting the issue in the first instance to the court that entered the protective order." We are aware of no effort on the part of Kodak to have the matter referred by Judge Owen to the judge presiding over the civil action. Moreover, in the absence of precedent, the enforcement action is an independent matter and, apparently, by the rules of the Southern District, was not considered a related case to be handled by the judge in the civil litigation. We have tried to remedy that.

The Government has won only a very limited victory, since we have ordered the matter remanded with a strong suggestion that it be handled by the judge in charge of the civil litigation and, hence, of the protective order (as Kodak now belatedly requests).

We have not only made that suggestion, which we are reasonably certain will be honored by Chief Judge Edelstein and the District Court, but we have given a clear mandate to the District Court "to superimpose upon any enforcement orders such protective orders as may be required to safeguard the interests of the parties in the particular circumstances." Supra at 16.

Accordingly, we grant rehearing, and upon rehearing, grant Kodak's request to excise footnote 11.[2]

We also, for clarity, amend the first sentence on page 16, second column, as requested, to read: "A list of all Kodak documents turned over to the Government by GAF, *or referred to in GAF memoranda turned over to the Government*, should be given to Kodak."

The petition is, in all other respects, denied.

MULLIGAN, Circuit Judge, dissenting:

I dissent for the reasons previously given in my opinion of February 9, 1979, at 16.

---

2. We are withdrawing footnote 11 not because it is wrong but simply to give the District Court an opportunity to consider the questions *de novo*. We do not imply that Judge Pierce, who presides over the civil litigation, should not consider GAF to be the "producer" of its own memoranda, but, on the other hand, he may consider that GAF has sought to cooperate with the Government on a voluntary basis in the past and, hence, may be subject to some claims of waiver so far as Kodak is concerned.