**In The Matter Of FRIGITEMP CORPORATION, Bankrupt.**

**Bankruptcy No. 78 B 468.**

United States Bankruptcy Court, S.D. New York.

Jan. 14, 1983.

William Tendy, Chief Asst. U.S. Atty. for the Southern District of New York by David Denton, and Seth Taube, Asst. U.S. Attys., New York City, for United States.

Gelberg & Abrams, New York City, for Lawson Bernstein, trustee; Steven M. Schatz, New York City, of counsel.

Foley, Hoag & Eliot, Boston, Mass., for General Dynamics; William L. Gardner, Boston, Mass., of counsel.

Hollman & Byrne, New York City, for George Davis; Matthew L. Byrne, and Daniel Hollman, New York City, of counsel.

## OPINION

JOEL LEWITTES, Bankruptcy Judge.

I

### NATURE OF THIS CONTESTED MATTER

The Government, by the United States Attorney, has, by order to show cause, in accordance with the provisions of Bankruptcy Rule 914,[1] moved this Court for an order permitting access and presentation to the Grand Jury of certain documents sealed and deposited with the Clerk of this Court. These documents were sealed pursuant to a settlement agreement and protective order described more fully, *infra*. Additionally, at the hearing on the Government's order to show cause, the United States Attorney orally requested this Court to authorize the production by General Dynamics Corporation, pursuant to a Grand Jury subpoena duces tecum issued to that Corporation, of any deposition transcripts and documents obtained by Frigitemp Corporation's trustee in bankruptcy ("trustee") in connection with the Bankruptcy Rule 205[2] examination of General Dynamics conducted by the trustee. In particular, the Government, in this contested matter, seeks the following documents:

---

1. 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxvvii.

2. 411 U.S. 1025, 93 S.Ct. 3116, 37 L.Ed.2d xlvii.

1. Documents from Intersystems Design and Technologies Corp. ("IDT"), and/or George Davis sought directly from them by the Grand Jury subpoena;

2. General Dynamics' documents and transcripts of Bankruptcy Rule 205 examinations of General Dynamics' employees, sought directly from General Dynamics by the Grand Jury subpoena; and

3. Documents from the trustee's files required by Grand Jury subpoena other than those sought from Davis, IDT or General Dynamics. These documents are under seal pursuant to the settlement agreement, *infra.*

## II

## UNDERLYING FACTS

By order of this Court, dated January 23, 1980, the trustee was granted the right to commence an investigation into the acts, conduct, and property of the bankrupt, Frigitemp Corporation. Thereafter, on February 5, 1980, this Court permitted the trustee to undertake Bankruptcy Rule 205 examination of the General Dynamics Corporation in furtherance of his investigation. Since General Dynamics is situated beyond the territorial effect of a subpoena issued for the Rule 205 examination,[3] the trustee filed, in the Bankruptcy Court of Massachusetts, an application for ancillary examination.[4] Thereafter, the Massachusetts Bankruptcy Court issued subpoenas duces tecum to General Dynamics and several of its officials and employees. Following an objection to the subpoenas and a request for a protective order by the subpoened parties,

an "understanding of confidentiality" was reached during the course of a series of hearings before the Massachusetts Bankruptcy Judge Lavien. Thereafter the trustee did, in fact, proceed with Rule 205 examination of the subpoened parties.

In May 1980, pursuant to an order of this Court, the trustee was authorized to undertake another Rule 205 examination, this time, of IDT. On July 12, 1980, a protective order was issued by this Court which sealed all documents and information transmitted to the trustee, at the aforesaid Rule 205 examination, designated as confidential by IDT.

In April 1981 this Court, after a hearing, granted an order approving a "settlement agreement" among the trustee, one George G. Davis and IDT, dated April 14, 1981, wherein in exchange for $1.4 million paid to the trustee on behalf of the bankrupt estate, the trustee agreed to settle its alleged claim against Davis, IDT and other "Releasees".[5] In accordance with the terms of the "Settlement Agreement" the trustee was required to turn over to IDT all copies of transcripts of the Rule 205 examinations of any of the "Releasees" and all documents provided at, or in connection with, such examinations. Additionally, the original transcripts and documents were to be kept by the Clerk of the Court under seal and to be destroyed upon the closing of the Frigitemp estate.[6]

Notice of the trustee's application for an order approving the Settlement Agreement was made upon the bankrupt's Creditors'

---

**3.** The territorial effect of a Rule 205 subpoena is governed by Bankruptcy Rule 916, which adopts Fed.R.Civ.P. 45 in bankruptcy cases.

**4.** *See* former Bankruptcy Act § 2a(20), 11 U.S.C. § 11(20) (repealed). It is clear that § 2a permits an ancillary court to make orders "for the examination of ... witnesses concerning the acts, conducts or property of the bankrupt in and of the bankruptcy proceedings ..." 1 Collier on Bankruptcy ¶ 2.76 at 390.4–390.5 (14th ed. 1974) (footnote omitted). This bankruptcy case, commenced in 1978, is, of course, governed by the provisions of the former Bankruptcy Act. *See* Bankruptcy Reform Act of 1978 § 403(a).

**5.** The list of "Releasees" includes General Dynamics Corp., IDT, as well as persons deposed at the Rule 205 examinations of each of these corporations.

**6.** Prior to the instant application, Equitable Life Assurance Society of the United States, not a party to the "Settlement Agreement", unsuccessfully sought, in this Court, modification of the protective order provisions of that Agreement. *See Matter of Frigitemp Corporation,* 15 B.R. 263 (Bkrtcy.S.D.N.Y.1981).

Committee, the District Director of Internal Revenue and the United States Attorney for the Southern District of New York. No objection to the Settlement Agreement was entered by any of the parties or by any of the persons or entities given notice of the trustee's application.

## III

## CONTENTIONS OF THE PARTIES

### (a) IDT and GEORGE DAVIS:

IDT and George Davis assert that the documents sought from them here, by the Government, were covered by the July 12, 1980 protective order and the April 14, 1980 Settlement Agreement, approved by the Court. Their resistance, in the main, is grounded upon the general policy that protective orders and court-approved Settlement Agreements are to be observed and enforced particularly where, as here, parties have relied upon their enforceability.[7] Moreover, both IDT and Davis assert that the Government's delay in seeking the instant documents, in connection with the latter's ongoing investigation of Frigitemp, as well as the Government's failure to object to the Court's approval of the Settlement Agreement, forecloses the Government, on the bases of laches and estoppel, from now obtaining the relief requested, by it, here.

### (b) GENERAL DYNAMICS CORP.

General Dynamics has refused to produce transcripts of the Massachusetts Rule 205 examinations taken of General Dynamics and its personnel as well as the documents delivered to the trustee in connection with those examinations.[8] General Dynamics resists the Government's motion here on the ground that the transcripts and documents are subject to an "understanding of confidentiality" reached in the Massachusetts Bankruptcy Court, noted earlier, and accordingly may not be disclosed to third par-

ties. Furthermore, General Dynamics maintains that this Court's order, approving the Settlement Agreement, should be deemed to insulate it from the Government's instant application with respect to copies of those depositions and documents held by General Dynamics or its personnel. In the event this Court does not interpret the order approving the Settlement Agreement to afford General Dynamics that protection, we are requested by it to modify that order to expressly require that those copies, held by General Dynamics, are protected by the umbrella of confidentiality.

### (c) THE GOVERNMENT

Although the Government recognizes, when appropriate, the utility of protective orders between private parties, such orders, it argues, may be modified particularly when, as here, the public interest, *i.e.*, a Grand Jury, requires full disclosure. Moreover, since the protective orders and the Settlement Agreement deny disclosure by the trustee, the Government can obtain the bulk of the materials sought by it from IDT, Davis and General Dynamics, without modifying the orders and agreement. Accordingly, any other documents required from the trustee would amount to a minimal modification. Finally, the Government argues that it is not barred, under the doctrines of laches and estoppel, from the relief it requests here.

## IV

## DISCUSSION

### (a) THE SUBPOENA TO IDT AND DAVIS

In objecting to the Government's right to the requested documents, Davis and IDT rely chiefly on the Court of Appeals decision in *Martindell*.[9]

In *Martindell* the trial court ruled upon an informal request by the Government for

---

7. *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291, 296 (2d Cir.1979). *See also Matter of Frigitemp, supra,* note 6.

8. Apparently, General Dynamics has turned over some documents to the Government in accordance with the Grand Jury Subpoena.

9. Note 7, *supra.*

access to deposition transcripts sealed by a protective order. Before deciding whether to grant such access, the Second Circuit Court of Appeals set forth the conflicting factors to be weighed in reaching such determination. On the one hand, it observed, was the expressed objective of protective orders, *viz.,* to secure a "speedy and inexpensive determination" in civil conflicts by encouraging full disclosure of all evidence that might have any relevance to the litigation. This objective would be seriously undermined if witnesses who rely on protective orders cannot be certain of their enforceability. Against this objective must be weighed the public interest in obtaining evidence necessary for efficient law enforcement.[10]

The Court in *Martindell* found that the latter interest was minimized when the Government was the party requesting access. It held that it would be improper to supplement the "awesome investigative powers" of the Government by granting it access to sealed documents on the basis of an informal request, where the deposed parties had forborne their Fifth Amendment right to refuse to testify in specific reliance on the Protective Order.[11] We find, for several reasons, that the underlying rationale for *Martindell* to be distinguishable from the Government's present request for access to IDT documents.

In *Martindell* the Government sought access to transcripts of depositions taken pursuant to a protective order. The basis for the *Martindell* decision was the clear reliance by the deposed parties on an express provision in the protective order which prohibited disclosure of their testimony for purposes of law enforcement. As Judge Carter noted in a Memorandum Endorsement of his decision in *Carter-Wallace v. Hartz Mountain Industries, Inc.;*[12]

"*Martindell,* because the government was the purported intervenor, involved Fifth Amendment rights. The Second Circuit feared that witnesses would not testify in reliance on a protective order 'if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders' . . . Absent the special type of reliance on confidentiality manifested by the Martindell deponents, there is no reason to prevent third-party access to transcripts relevant to a subsequent action, especially where a substantial savings of time and money are achieved thereby."[13]

Here, at least with respect to Davis and IDT, the Government is merely seeking to obtain documents which pre-existed both the Settlement Agreement and the Protective Order. "The reliance of a private party upon protection of pre-existing documents from disclosure to the Government would normally be more difficult to justify than that of a witness who would, absent the protective order, have invoked his privilege and given no testimony at all."[14] Where, as here, the documents being sought by the Government are corporate books and records, such reliance is even more difficult to justify in view of the generally accepted rule that an officer of a corporation may not claim a privilege against self-incrimination to justify refusal to produce corporate documents sought by Grand Jury subpoena duces tecum directed to either the corporation[15] or the individual corporate officer.[16]

Furthermore, *Martindell* dealt with an *informal* Government request which the Court found to be an attempt to improperly

**10.** 594 F.2d at 295–96.

**11.** *Id.* at 296. *See also GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129, 132 (S.D.N.Y. 1976); *Wilk v. American Medical Ass'n.,* 635 F.2d 1295, 1300 (7th Cir.1980).

**12.** 92 F.R.D. 67 (S.D.N.Y.1981).

**13.** *Carter Wallace v. Hartz Mountain Industries, Inc.,* 81 Civ. 458 (S.D.N.Y. Nov. 16, 1981) (endorsement denying motion for reargument).

**14.** 594 F.2d at 297, note 8.

**15.** *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911).

**16.** *Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911). *See also Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

*supplement* the Government's "awesome investigative powers."[17] Here the request for access was made pursuant to the Government's use of its express investigative power—a Grand Jury subpoena.[18]

■ Applying the *Martindell* "balancing" approach we would be compelled to strongly consider the policy of giving broad investigative powers to a Grand Jury in order not to frustrate its investigation.[19] We need not decide here whether such interest would weigh heavily enough in favor of disclosure, even where there exists the "special type of reliance on confidentiality" that was present in *Martindell,* since in the instant matter, at least with respect to Davis and IDT, that type of "special reliance" is not present. The pre-existing documents sought from them are not subject to a Fifth Amendment privilege. Accordingly, Davis and IDT cannot claim to have surrendered any privilege when they produced the documents upon their alleged reliance that they would not be turned over to the Government. This analysis disposes of the claim that Davis and IDT acted in reliance on the Settlement Agreement as well as on the Protective Order.

Perhaps the most compelling distinction between the matter at bar and *Martindell* is the fact that the Government is seeking the documents from the parties who *produced* them under protective order but which were not *bound* by that order. While the Protective Order clearly prohibited the trustee from disclosing the sealed documents, it placed no such express restriction on IDT or Davis. To paraphrase Judge Carter, the subpoenas to IDT and Davis are directed to parties who originally had control of the evidence and who were not bound by the sealing provisions of either the Protective Order or the Settlement Agreement which by their own terms prohibited disclosure only by "the receiving party, [the trustee]." None of the cases cited by any party support the "absurd tenet" that a party can avoid a subpoena merely because it disclosed the same material to an adversary bound by a protective order.[20]

## (b) THE GRAND JURY SUBPOENA ISSUED TO GENERAL DYNAMICS

The Grand Jury subpoena issued to General Dynamics seeks not only documents submitted in connection with the Rule 205 examination held pursuant to order of the ancillary Bankruptcy Court of Massachusetts, it requires, as well, the production by General Dynamics of transcripts of the Rule 205 depositions. To the extent that such subpoena encompasses disclosure of a witness' testimony, General Dynamic's reliance upon *Martindell* facially is more appealing than the unsuccessful dependence by IDT and Davis upon that decision.

As noted earlier, the *Martindell* panel denied the Government's informal request for

". . . the *deposition testimony* of witnesses on a matter delicate enough to have counselled the invoking of a claim of constitutional privilege against self-incrimination, which claim of privilege was fore-

---

**17.** 594 F.2d at 296. *See Wilk v. American Medical Ass'n,* 635 F.2d at 1300.

**18.** The Court in *Martindell* noted that it was not called upon "to decide whether the Government might be entitled to enforcement of a subpoena compelling production of the depositions." 594 F.2d at 296, note 6. *See also Wilk v. American Medical Ass'n,* 635 F.2d at 1300. *United States v. GAF Corp.,* 596 F.2d 10, 18 (2d Cir.1979). The *Martindell* panel further noted that:

"[Its] decision in this case is consistent with *United States v. GAF Corporation,* which recognizes, as do we, that in appropriate case the district court may, upon a proper showing in the exercise if its discretion, grant an application by the Government pursuant to

its *statutory* enforcement power (anti-trust civil investigative demand) for modification of a protective order entered in civil litigation between others to permit inspection of documents covered by the order." 594 F.2d at 297, note 8. (emphasis in text).

**19.** *See United States v. Calandra,* 414 U.S. 338, 344, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972); *Wood v. Georgia,* 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569 (1962); *United States v. Stone,* 429 F.2d 138, 140 (2d Cir.1970).

**20.** *Carter-Wallace,* 92 F.R.D. at 69.

gone on an explicit agreement between the parties sanctioned by a protective order for limited use of that testimony." [21]

■ Of course, the first proposition that invites inquiry is whether the Rule 205 testimony of General Dynamics' witnesses encompassed matters "delicate enough to have counselled the invoking of a claim of constitutional privilege against self-incrimination." [22] The record before Judge Lavien, in connection with the so-called "understanding of confidentiality," entered into between the trustee and General Dynamics, simply reveals General Dynamics' concern over the dissemination by the trustee to third parties of "allegations [in the affidavit of trustee's counsel and the trustee's memorandum of law] that have been made about individuals at General Dynamics" [23] as well as "assertions [therein] of certain 'business crimes'." [24] Thus, the "understanding of confidentiality" here was devised and designed to cloak certain *ex cathedra* statements by the trustee concerning the business integrity of General Dynamics, not to insulate the deposition testimony of witnesses. Moreover, even assuming *arguendo* General Dynamics' contention that the deposed witnesses here testified in reliance upon the "understanding of confidentiality" by foregoing the assertion of their Fifth Amendment privileges, no claim or intimation by any deposed witness has

been interposed indicating that any such testimony arguably was self-incriminating. Even more devastating to General Dynamics' argument, in this regard, is that even if the deposed witnesses could properly claim a Fifth Amendment privilege, General Dynamics has no standing to assert that privilege on behalf of its employees. [25]

Finally, and additionally quite critical to our conclusion that General Dynamics has failed to sufficiently color match the facts here, with those in *Martindell,* is that the depositions and documents are being sought from General Dynamics which is a party not bound by the "understanding of confidentially" [26] and which is not a part to the Settlement Agreement. [27]

Accordingly, the "balancing" approach as applied to the facts of the instant matter, unlike the result in *Martindell,* favors "public interest in obtaining all relevant evidence" [28] required by the Grand Jury subpoena issued to General Dynamics.

### (c) DOCUMENTS FROM THE TRUSTEE'S FILES

■ Having found that the Protective Order and the Settlement Agreement do not prevent enforcement of the Grand Jury subpoenas issued to Davis, IDT and General Dynamics, we now turn to the group of materials sought directly from the trustee.

---

**21.** *United States v. GAF Corp.,* 596 F.2d 18 (2d Cir.1979) *on petition for rehearing.* (emphasis in text).

**22.** *Id.*

**23.** Transcript of Hearing, February 19, 1980, Bankr. Court D. Mass. at 36.

**24.** *Id.* at 47. It appears, as well, that the "understanding of confidentiality" was entered into, as well, with respect to corporate documents of General Dynamics which presumably contained confidential business & proprietary material.

**25.** *Flavorland Industries, Inc. v. United States,* 591 F.2d 524, 525 (9th Cir.1979).

**26.** The transcript of the hearing before Bankruptcy Judge Lavien in Massachusetts reveals that General Dynamics was concerned only with dissemination by the *trustee* to the general public of confidential business material. Note

23, *supra* at 47–8. Accordingly the bankruptcy judge instructed trustee's counsel not to disclose materials and information designated as confidential. Nowhere in the record is it suggested that General Dynamics was restricted, in any manner, with respect to disclosure of materials within the "understanding of confidentiality."

**27.** Since the terms of the Settlement Agreement entered into between and among IDT, Davis and the trustee, with respect to documents and other confidential information, expressly limited its protective provisions to the *originals* of such materials in the trustee's possession, and not *copies* thereof in IDT's possession, we decline the non-party, General Dynamics' invitation to modify the Agreement to protect *copies* of the General Dynamics' deposition transcripts.

**28.** *Martindell v. I.T.T. Corp., supra* at 296.

These include documents received by the trustee in his investigation of various parties other than General Dynamics, IDT and their personnel. As such, Davis and IDT can assert no pre-existing interest with regard to these materials, and, although they are covered by the sealing provisions of the Settlement Agreement, the Grand Jury's need for information relevant to its investigation clearly mandates enforcement of the subpoena.

### (d) EQUITABLE ESTOPPEL AND LACHES

Somewhat more complicated is the argument by Davis that the doctrine of equitable estoppel bars enforcement of any of the subpoenas.

Until recently, it was well established that estoppel could not be invoked against the Government.[29] The Supreme Court, in recent years, has indicated that under certain circumstances the Government might be subject to the dictates of that doctrine.[30] However, the Court did not indicate what type of conduct by a Government employee would acceptably give rise to the application of estoppel and indeed has refrained from deciding whether even "affirmative misconduct" would estop the Government.[31]

Although the Ninth Circuit has shown a willingness to permit estoppel to be assert-ed against the Government in certain circumstances,[32] the Second Circuit has generally declined to follow that course,[33] and was recently reversed when it invoked such an estoppel in *Hansen v. Harris*.[34]

Lacking conclusive guidance on the question, "we avoid that bramblebush by assuming the application of the doctrine [of estoppel] if the facts warrant it." [35]

Generally, a claim of equitable estoppel is available upon a showing of the following four elements:

1. The party to be estopped must know the facts;

2. He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

3. The latter must be ignorant of the true facts; and

4. He must rely on the former's conduct to his injury.[36]

In support of his claim of estoppel, Davis asserts that based on the Government's continued interest in the *Frigitemp* case, it knew all the facts. Further, he asserts, the United States Attorney's Office was given notice of the Settlement Agreement before it was approved by the Court, and as such the Government knew of the sealing provisions contained therein. With respect to

**29.** *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Goldberg v. Weinberger,* 546 F.2d 477, 480–81 (2d Cir.1976), *cert. denied* 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977).

**30.** *INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973) (*per curiam*). *See generally* K. David, Administrative Law of the Seventies § 17.01 (1976); Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551 (1979).

**31.** *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981) (*per curiam*).

**32.** *United States v. Ruby Co.,* 588 F.2d 697 (9th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *Santiago v. Immigration & Nationalization Service,* 526 F.2d 488 (9th Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *United States v. Lazy F.C. Ranch,* 481 F.2d 985 (9th Cir.1973); *Brandt v. Hickel,* 427 F.2d 53 (9th Cir.1970); *Schuster v. C.I.R.,* 312 F.2d 311 (9th Cir.1962).

**33.** *Goldberg v. Weinberger,* 546 F.2d at 481. In *Goldberg* the Second Circuit specifically limited its holding in *Corniel-Rodriguez v. I.N.S.,* 532 F.2d 301 (2d Cir.1976), which permitted the Government to be estopped, to the extraordinary circumstances of that case involving a Government employee's "non-compliance with an affirmatively required procedure." 546 F.2d at 952.

**34.** 619 F.2d 942 (1980), *rev'd Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam).

**35.** *Precious Metals Assoc. v. Commidity Futures Trading Comm.,* 620 F.2d 900, 909 (1st Cir.1980).

**36.** *Rosenthal v. National Life Ins. Co.,* 486 F.Supp. 1018, 1023 (S.D.N.Y.1980).

the Government's conduct, Davis asserts that the Government's failure to object to the sealing provisions contained in the Settlement Agreement amounted to an acceptance thereof on which Davis had a right to rely. As to element three, Davis claims that when the Government accepted the sealing provisions it intended to issue the instant subpoenas and overturn the sealing provisions. Finally, Davis alleges detrimental reliance in that he paid $1.4 million for provisions in the Settlement Agreement which the Government is now attempting to overturn.

The Assistant United States Attorney seeking enforcement of the subpoenas argues that he did not have knowledge of all the facts; [37] that by its silence the Government did not disclaim any interest in the sealed documents; and that the decision to issue the subpoenas was based on facts that had only recently come to the Government's attention.

The record before us is insufficient to support a determination of whether the Government had knowledge of the sealing provision or whether at the time the Settlement Agreement was approved the Government intended to issue the subpoenas. For the purposes of resolving the issue at hand, we will assume the existence of the first and third elements. [38] Our attention is thus focused on the conduct of the Government which allegedly gave rise to the claim of estoppel: its failure to object to the Settlement Agreement.

"It is well settled that the *sine qua non* of an estoppel is some inequitable or fraudulent conduct engaged in by the party sought to be estopped which is reasonably relied upon by the other party to his detriment." [39] Mere silence or failure to respond does not amount to estoppel conduct. [40] For a party to be estopped on the basis of its silence it must have a "duty to speak." [41]

■ In the instant case the Government was not a party to the Settlement Agreement; it therefore had no "duty to speak" and no obligation to voice any objections. [42] Thus, Davis has failed to demonstrate such conduct on the part of the Government that would give rise to a claim of estoppel.

■ Separate and distinct from the claim of estoppel is Davis' argument that the doctrine of laches bars the Government from seeking any of the subpoenaed materials. In support of this claim Davis asserts that the Government's four year delay in seeking the subpoenaed materials is inexcusable and has resulted in prejudice to Davis. It is well established that "the United States is not . . . subject to the defense of laches in enforcing its rights." [43]

---

37. He claims that only the Civil Division of the United States Attorney's Office received notice of the Settlement Agreement and that the Notice of Settlement did not even mention the sealing provisions.

38. We note that in so doing we avoid deciding whether knowledge of one arm of the Government (Civil Division, U.S. Attorney's Office) is to be imputed to another (Criminal Division).

39. *Redington v. Hartford Acc. & Indem. Co.,* 463 F.Supp. 83, 86 (S.D.N.Y.1978).

40. *Precious Metals Assoc.,* 620 F.2d at 909.

41. *Minerals & Chemical Philipp Corp. v. Milwhite Co., Inc.,* 414 F.2d 428, 430 (5th Cir. 1969); *Prebensen & Blakstad v. Board of Com'rs. of Port of New Orleans,* 241 F.Supp. 757, 760 (E.D.La.1965). *See also Precious Metals Assoc.,* 620 F.2d at 909; *In re Walton Hotel Co.,* 116 F.2d 110, 112 (7th 1940).

42. *United States v. Bedford Assoc.,* 491 F.Supp. 851, 867 (S.D.N.Y.1980). *See also Precious Metals Assoc.,* 620 F.2d at 909.

43. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Utah Power & Light Co. v. U.S.,* 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *United States v. Carroll,* 203 F.Supp. 423, 429 (S.D.N.Y.1962). We note that even if the Government was not immune to a claim of laches, the facts here do not support invocation of the doctrine. Firstly, Davis has failed to demonstrate that in delaying to seek the subpoenaed materials the Government was negligent in pursuing its criminal investigation of Frigitemp. Although the record before us is insufficient to support a determination of whether the delay is in fact inexcusable, we doubt whether it is appropriate for a private party to tell the Government at which pace it should pursue an investigation. More importantly, however, Davis has failed to establish the type of prejudice that would support a

## V

### CONCLUSION

We accordingly hold that enforcement of the Grand Jury subpoenas issued to Davis, IDT and General Dynamics is not barred by either the protective order of the Massachusetts Bankruptcy Court or the Settlement Agreement approved by this Court. Further, we direct the Clerk of the Court to permit the Grand Jury access to the materials sought by the subpoena issued to the trustee. Finally, the application of General Dynamics for modification of the Settlement Agreement is denied.

Settle an order on notice.

claim of laches. The fact that Davis paid $1.4 million for the Settlement Agreement and the sealing provision contained therein, was not a *result* of the Government's delay in seeking the materials. *See Emle Industries, Inc. v. Paten-* *tex,* 478 F.2d 562, 574 (2d Cir.1973); *Reconstruction Finance Corp. v. Harrisons & Crosfield,* 204 F.2d 366, 370 (2d Cir.1953) *cert. denied* 346 U.S. 854 (1953).